Williams Building Company, Inc. v. Secretary of State, 2023-2337 Motion for Partial Summary Judgment as to Modification P-20 and granted the government's motion for summary judgment, dismissing the breach claim, as I'll refer to it, for procedural reasons and for other quantum issues. I don't want to belabor the facts too much, but I feel like, given the tortured timeline, it's important to just highlight a few key moments in time here, if you'd indulge me. So the solicitation was issued by the Department of State OBO, Overseas Building Operations, in January of 2015. But there were two settlements. Each one involved substantial payments of over a million dollars, and each one had a waiver of liability. Yes, Your Honor. So there was a series of mods, modifications, or as you refer to them, settlements. Modification P-7 and P-8, and then after that, Modification P-20. So our argument is, and I can go directly to the language in Modification P-20 if we work backwards, Modification P-20, if I could direct the Court to the appendix, it starts at page 1839. Do you agree that, putting to one side Modification P-20, that Modification 7 and 8 would be viewed as resolving the cardinal change issue? No, Your Honor. No? Why not? We don't believe that it did. Modification 7 addressed these new IFC drawings, this increased scope of work. When the government issued this drawing package, this IFC set, it was, for lack of a better phrase, it was half-baked. It was a complete mess. So they awarded that in 2015, and my client had to spend hundreds and hundreds, almost a thousand hours, debugging these drawings and cleaning them up. So they reached a point, finally, when they executed Mod 7, which was in March of 2018. But the Board said that you didn't include in Count 1 of the complaint any claim for defective specifications based on the newly incorporated specifications in Mod 7 and Mod 8. Right. So I guess that gets to the issue of the nature of the claim. The breach claim was a cumulative cardinal change claim. It wasn't for one specific item of work. So at the time they executed Mods 7 and 8 and signed those releases, they couldn't possibly have known what was to come in the future. So 7 addressed IFC, the new IFC set, and addressed that increased scope of work. 8 then paid them for time and money to go double shifts to implement this new scope of work. But neither one of those mods addressed the inherent problems with the defective specs. Based on all the time that we spent in research and development cleaning this up. The Board said that you didn't include a defective spec claim with respect to the new spec in Count 1 of the complaint. I think that I respectfully disagree, and I can refer the Board, or excuse me, to the Court, to the complaint. It's in Appendix 116, or I'm sorry, pardon me, 91, it begins. And we specifically, in the complaint we specifically address the fact that. Where is the complaint in Count 1? The complaint, I'm going to look at it. Wait, wait, wait, where is the complaint in Count 1? Appendix. Talk about the specifications, the new specifications adopted in Mods 7 and 8 being defective. Right. Where does it say that? Appendix, page 115, it talks about the fact that starting at paragraph 74, on March 6, 2019, Williams amended his claim to include time-related costs, and it goes on to state 76. On May 9, 19, we submitted an updated claim with the time-related cost proposal removed therefrom. And so those documents are incorporated into the complaint. That claim, the updated claim. This is not Count 1, is it? This is something under the heading of procedural history. That's correct. Count 1, as I understand it, ends at page A101. Count 1 goes from A93 to A101? That's correct. I'm just trying to find the page. Yeah, starting on page 100, it talks about how OBO had modified the project so drastically. The changes represent a cardinal change to the contract. They breached the implied duty. So nowhere was it limited to the language of those mods. And I referred on this issue, on this precise issue that we're talking about, there was some dissent language from Judge Newman in this court's Amortex decision, where she talked about the fact that you don't know this cardinal change until the end of the contract. It's a cumulative thing. You don't know what it is until you've considered all the modifications and all the implications. What other modifications were there after 7 and 8 that increased the scope of the work? There were additional modifications that are not really issued in this case. They got through 7 and 8, and we got to mod 20. By the time they were negotiating this breach, these other outstanding claims. So the answer is there wasn't any additional work added after 7 and 8? I don't have all the mods on the record, but from mod 9 through mod 19, there were additional changes that were made. There was one mod, I believe it was 15. I may be mistaken. Where have you alleged that those later modifications worked a cardinal change? Where have we alleged? We've argued a cumulative cardinal change theory, Your Honor, in the claim which was submitted after mods 7 and 8, which appeals to the board and which is all part of the appeal. The appeals of those claims and those claims are part of the record before the board. It's well laid out in all those claims. The update in May of 19, which was after, that claim went on and on about these additional time we had to spend cleaning up the specs. These new IFC drawings, they weren't good either. We just spent hundreds of hours dealing with those. Then we had the government come to us and suspend the job. So that became part of this cardinal change. The whole job changed. The job went from $14 million to over double that. More than $28 million, I think it was. The scope of the time went from 16 months to nearly triple that. So the job turned into something. At the end of the job, of course, there was COVID, but it turned into something that they never anticipated when they bid the job. They didn't know the nature of all these changes and this interference until toward the end of the job when they sat down and negotiated mod 20. So mod 20, if we look at the language of mod 20, mod 20 acknowledges it's a bilateral modification. It was negotiated with Williams and the chief of contracting there, Mr. Powell, obviously a very experienced man. They drafted the mod, and as the mod indicates, they intended to have a global resolution of all outstanding claims. The mod specifically says there's three outstanding claims. There's storage costs, there's this time-related cost proposal, and there's this breach cardinal change claim. And that's the one that we're here arguing about today. The mod states this is a quote-unquote partial settlement of those claims, of those outstanding claims. I don't understand how mod 20 recognized that those were viable claims. They recognized that the claims existed, but it didn't say that they weren't barred by mods 7 and 8. Well, respectfully, Your Honor, the way that we read that, the plain language of the mods at the time it was negotiated said, we will pay you for this breach claim. We've read the breach claim. We've read all these allegations. We know about mod 7. It doesn't say we will pay for the breach claims. It said we'll ask for additional authority for settlement. If I could, can I just turn to the exact language of the mod so I don't misquote it? I appreciate it. Well, it says additional funding to settle the breach contract claims will be requested when additional funds are available. That's right. And our position, Your Honor, plain reading of that modification is that that means that they reached an agreement. They sat down. They had intended to have a global resolution. Our position is that they reached an agreement. They reached a quantum agreement on the first two claims. They paid those. And they said we don't have the money right now to pay your breach claim. We've read it. We know all about it. It says additional funding to settle the breach claim will be requested when the funds are available. Not if. It says when. There's nothing conditional about that language. What about the release further on in mod 20, contract as released, appendix 769? 769. Hereby releases the government from any and all liability. Further requests? Yes, okay, I'm looking at the release language. In consideration of the mod agreed to herein, it's a complete equitable adjustment of 4.9, release the government from any and all liability for further requests, further requests for equitable adjustment demands attributable to the facts and circumstances set forth in the above reference PCOs, referring to one and two, immediately preceding that, Your Honor. One was PCO 67, which dealt with additional storage costs. And two, which was a time extension mod. So it's referring to those two specific items. And then it said we'll deal with the breach when we get the money. And that's the way. I don't know how else to read that. Were there multiple issues in this breach of contract claim beyond, you know, your cardinal change theory that you resurrected? Yes, Your Honor. That creates some ambiguity as to what this person could have even been referring to. Well, we believe, yeah, there were additional items, one of which was, and I put a long history in my brief about that issue, was this interference by the Department of State. And if you could just indulge me for a minute, I'll just quickly go through it. We had a state, a communist state-owned subcontractor that we had to hire. The OBO told us, hire this Washi. So we hired Washi. It came to a point there when they weren't working out. We wanted to get rid of them. We got somebody else. The OBO suspended the job, suspended the project for three months, and then began to secretly negotiate with the state-owned subcontractor, Washi, met at the embassy in Beijing, negotiated a dollar amount. We weren't there. We weren't part of this meeting. We didn't know what was going on. Counsel, you're well into your rebuttal time. If you want to continue and recite facts, you can, or you can save your time. I prefer to just finish this line. I appreciate it. So we had this meeting. They had this secret meeting. They came to us and said, we're not giving you the site back until you pay this state-owned subcontractor 800 plus thousand.  Write them the check. What I found out in discovery during depositions, long after the board had said, you know, here's your statement of costs, you can't introduce any costs after this. This was in the beginning of the case. So in discovery I learned through this deposition that there was a nexus between these costs that we had to pay and the government's conduct. The government was the one that told us to pay it. They didn't verify these materials were there. They, in fact, were not there. And then they lifted the suspension as soon as we paid this communist-owned subcontractor. So, you know, and I had asked the one gentleman, and I don't recall which one it was, but I said, well, why didn't you invite Williams to these negotiations? He said, well, we thought they'd get blackmailed by Huaxi. Well, we essentially got blackmailed by OBO. They told us, you've got to pay this amount or you don't get your site back. You can't finish your work. So we had no choice, but the materials that we paid for weren't there. So there's the damage on that specific item. And we were barred from including that in this case because it came after the statement of costs. I have a minute 30 to reserve, so I'll take that on rebuttal. Thank you. We'll give you two minutes. Thank you, sir. Mr. Long. Good morning, and may it please the Court. Two points, I think, maybe three. First, the modifications 7 and 8 do address the cardinal changes issue. There's been a question as to whether or not subsequent activity is folded into that. And I would note that the Board, in its decision, found, first of all, to Your Honor, Judge Dyke's question, I believe, that this wasn't a raise in the complaint, the post-modification activity that allegedly amounts to a cardinal change, but also at Appendix 20 to 21, the Board additionally concluded that as a factual matter, what might have been included in this breach claim on the cardinal change theory after you exclude the pre-modification 7 and 8 couldn't amount to a cardinal change. So there's both a conclusion that the modification was effective, and all of the modifications were effective, and also that what was left after you took account of those modifications could not amount to a cardinal change. Second of all, I think the Modification 20 language is quite clear in our view, and that it does not vitiate Modifications 7 and 8. I will point out to Judge Chen's question, yes, there are multiple issues folded into the breach claim that is included in the May 9, 2019, CDA claim. There's the cardinal changes claim, which I just addressed. There's also an issue about responding to RFIs, and there's also this WASHI subcontractor issue that my friend Mr. Cox was discussing a moment ago. And so we see that if we're looking at that language that says additional settlement funds will be requested, that it's not at all clear that that's referring, that that's some sort of, I think unambiguously it is not a commitment to settle or a settlement. But it also, as a factual matter at that point, there were multiple sort of elements of this breach claim floating around, and it's not at all clear from that language what, if anything, or how that's being parsed out by the parties in the context of that. It is contemplating something, though. I think we can't reduce it down to rubble. The statement has some kind of intention behind it. I agree it has some intention, Your Honor. I think that's right. It's a commitment. Additional funding will be requested with respect to the third claim. Right. So there's some contemplation that Williams is entitled to something related to the third claim. I think that there's an expression there potentially by the contracting officer of that view. But I don't think that that then vitiates, to use the word again, the effects of Modification 7 and 8. So whatever may be contemplated by that language, it doesn't indicate a waiver of parties' prior agreement in payment in relation to Modification 7 and 8. They are settled all the time, even though a few believe that the claims don't have any merit. They're litigation costs or whatever. I don't see that the effort, the contemplation to try to settle a claim is a concession that the claim has any merit. We, of course, agree, Your Honor. Yes. And then just so I think toward the end of my friend Mr. Cox's argument, he suggested that the State Department had blackmailed WBC. And I just want to, first of all, of course, note that we don't agree that that's what occurred, but also point out that the Board denied the State Department's summary judgment on the issue of this subcontractor relationship and rather found that WBC and Williams had been unable to prove damages. And so, first of all, I don't believe this record supports any suggestion of blackmail. Second of all, that wasn't the basis for the Board's grant of summary judgment on that specific issue. And if there are no further questions, we ask that you refer. Thank you. Thank you, Counsel. Mr. Cox? I don't have anything to read, Your Honor. All right. Case is submitted. Thank you to both counsels.